Allen Seidler for the appellate, Fegans, who is here because he complains that the imposition of lifetime supervised release was reasonable in his case. The lifetime supervised release, actuarially speaking, was 45 years in excess of what probation was asking for and what the government agreed to by its silence. The judge, Judge Sullivan, in imposing lifetime supervised release said that the proceedings were not to be entirely punitive, but the record demonstrates that the proceedings were only punitive. Did Judge Sullivan say that this might be reconsidered after five years? Your Honor, he did. I don't think he said five years. He said it could be reconsidered at some point in the future, but saying that it can be reconsidered at some point in the future is far different than— Of course it is. But, you know, when Judge Sullivan sentenced him to lifetime supervised release, I don't know what— First off, there was no mention of any of the factors under 3553A. Not only was there no mention of it, there was no indication that the judge even considered it. In this case, Judge Sullivan knew about this defendant other than the fact that he had a video in front of him or a video was at the basis of this. And Judge Sullivan said that it was some form of terrorism by putting the video on the Internet. I'm not going to dispute that it was a terrible act. Did you object to any of this? I objected. Well, I invited Judge Sullivan to look at the video. I invited— Did you object to the imposition of a lifetime term of supervised release? Well, I didn't—I objected in the—I didn't object in the sense that I was asking for less. Judge Sullivan imposed lifetime supervised release. At that point, I didn't say, well, I object to that. But, I mean, obviously, I objected to it because I was asking for far less. It was what—probation didn't ask for it. The government didn't ask for it. Nobody asked for it. My response at that point was, well, you know, lifetime supervised release for a 28-year-old is too much time. And then we got into the discussion of, well, Judge Sullivan said, you know, it could be reviewed in the future, possibly, but that still leaves it up to his discretion. We have held, in a couple of other cases, that lifetime supervised release can be OK, haven't we? I believe we did it in US v. Hall, on which Mr. Judge Lohier was on the inherent about lifetime supervised release, which makes it unreasonable. Correct. But in this case, in arriving at the decision for lifetime supervised release, what Judge Sullivan did was say, this is a terrible crime, and I—the consequences are too great if I—if I ignore it, so I'm going to put you on lifetime supervised release. That's something a little more specific than that. And if I can quote him, he says, this is really a case just like—just unlike any I have really seen in terms of just enormity of misconduct and cruelty and the impact it has had. Based on what? I mean, he made—he made that statement. You know, what—let's take the sex—and I'm not excusing anything here, but let's take the sexual element out of this case. If he had looked at the video, he would have, in my opinion, would have been clearly convinced that the filming wasn't against the will of the victim. The filming was done as a—you know, they were both engaged in filming a sex act. He held—she was performing fellatio. He held up a cell phone at her face. She's looking at the camera. So if we take all of that out, what he did what was wrong was he got in an argument with her common-law wife, and because he was in an argument with the common-law wife, he published this video on the Internet. That's a terrible thing to do. But to say that this is the worst crime I've ever seen, I mean, I think that's an overstatement. And if you're going to say it— There was no objection. And so we review that, this for plain error, don't we? Judge, how can you say there was no objection because I didn't say I object? Yes. I objected. How many did you say that? Did you not say that? You said I have no legal impediment. Is there any legal impediment? Well, the judge—the judge—the legal impediment is what? That he can't do it? He can do it under the statute, but is it reasonable? I'm here to say it's not reasonable. Not that there isn't—the statute doesn't provide for lifetime supervised release. You and I have both been in district court. If you think that it's not reasonable, then it's your obligation to say that it's not reasonable. In fact, my view is that it's also the government's obligation to say it's not reasonable, and that is a legal impediment. What you said was there is no legal impediment, which everyone in district court on appeal would understand means it's reasonable within the broad spectrum of that word. It is—if there's—the legality of lifetime supervised release provided for by the statute speaks for itself. Whether—whether after going through this and making sentencing submissions and asking the judge to impose less time and bringing out the fact of the condition of his mother, all of that doesn't mean that I said that, yeah, sentence is fine, let's go on. He can go to prison for 24 months. He can come out and do lifetime supervised release. Everything is fine. I was making the contrary presentation the whole time I was in there. So if there is—is there a legal impediment? Does the statute provide for supervised release? Yes. So therefore, there's no legal impediment. He wasn't exceeding the statute. The statute I submit provided that he could do that. And what are the consequences? What are the consequences to Feigin by a 28-year-old man being on supervised release for the rest of his life? He can go to jail for the rest of his life without grand jury action. He can go to jail for the rest of his life without a jury trial. He can go to jail for the rest of his life without a pre-sentence report. And all of that occurs because the judge said, this is a terrible crime. I'm giving you supervised release for life and that's it. He didn't consider anything else. Why wasn't it your burden to say to the district judge, I object. You must do more than you have done to do this. This is something that you can do under the statute. But under Caveira, this is substantively unreasonable. Substantive unreasonableness under—in sentencing under Caveira is always going to be something that is legally permitted. If it were not legally permitted, you wouldn't need it. You'd just say it's illegal. So why isn't it your burden to say to the judge, come on now. Give me more reasons. I mean, that's exactly what plain error is about, isn't it? Everything that went up to the point of I'm giving you supervised release for life was contrary to giving supervised release for life. To the extent that I didn't say I object again, I didn't object again. I wasn't asking for supervised release for life. I was asking for a reasonable sentence of supervised release. There were sentencing submissions here. This is a package. And the fact that at the end of the judge's decision, I didn't repeat again and say, judge, this is not fair. This is not reasonable. I don't think that means that I waived the argument. I made the argument before he came to the decision. I wasn't agreeing with him at any point, other than the fact that I said, yes, you can impose supervised release up to life. But that doesn't mean that I agreed with the ingredients  Thank you, Your Honors. May it please the Court. Cecilia Vogel for the government. I represent the government on appeal, and I represented the government in the violation of supervised release proceedings in the district court as well. Can I just be clear about something? The recommendation of the probation department was five years supervised release? That's correct. And has the government or the probation authorities changed their view as to that five-year recommendation? The government did not make a recommendation as to supervised release at the time of sentencing. And the government's view is that lifetime supervised release was a reasonable, substantively reasonable sentence in this case, given the totality of the circumstances. The defendant's history, his criminal history, which was lengthy, the fact that Feigens was convicted of a serious sexual crime, essentially a rape, as Judge Sullivan called it, involving a minor under 15 when Feigens was 24. And those facts of that underlying offense are described in the PSR. Feigens also has a history of absconding and failing to abide by supervision. When he was released from jail on the underlying state conviction, he absconded for approximately a year. It took that long for parole to find him, and during that time they ultimately found him in Alabama after they learned he'd been living in Georgia. And in that period of abscondment, he had failed to register as a sex offender. That then led to his indictment in an eventual Federal case on failure to register as a sex offender. But why not 15 years of supervised release or 10 years of supervised release? Why a lifetime of supervised release? The facts here are truly egregious, Your Honor. I think the fact that this defendant served a substantial sentence for a sexual contact offense involving a minor, then absconded for over a year. But you did not think that yourself until the judge did that, did you? I mean, you were willing to go, I don't mean you necessarily, but the government was willing to go along with a probation of five years so that the lifetime was something that may have come to a bit of a surprise for you as well. It's correct that lifetime supervised release was not the specific recommendation of probation or the government at time of sentencing. But the question here before And it is extraordinarily harsh. Correct. It is a harsh sentence, Your Honor. But these are, this is really an egregious case, one where such a term of supervised release is reasonable. Well, I must say I have now heard a fair number of cases in which people have done what this guy did, and it's pretty awful, but of doing something and then spreading it out that way. But it seems to happen with, I won't say monotonous regularity, but with some regularity. You know, this isn't that unusual that men do this, and it's horrible. But it should all of them be supervised, be released for life? It is really horrible conduct, Your Honor, and the victims did submit, made submissions to the court explaining how traumatic it was for them. But I think in this case it is particularly egregious considering that the defendant committed this violation while both on New York parole supervision and federal supervision after barely completing 27 months of federal imprisonment, after completing a jail term for the underlying sex offense involving a minor. This is someone who has already received substantial terms of imprisonment and should be deterred. He, in addition, was not allowed to have a Facebook account, and he used Facebook to disseminate these videos. It shows a real willingness for deception. I think what you're arguing is that there are several factors beyond the single act that led to the violation proceeding that support Judge Sullivan's determination based on his assessment, he's there in court, that lifetime supervised release was an appropriate one. Correct, Your Honor. Judge Sullivan explicitly on the record considered the 3553A factors and walked through those. And really here what we have, it's the compounding over time, the culmination of the defendant's history and conduct, his criminal history and his conduct while on supervision over a period of years. And this was the tipping point in front of Judge Sullivan once he had this information in front of him that at this point, with all of this information, Judge Sullivan determined that lifetime supervised release was reasonable, particularly here his decision was driven by the need for deterrence and to protect the public. Those were really the driving factors, and that's apparent from the record and the explanation that Judge Sullivan gave. Do you – I keep coming back to – no, I might look at this case in a somewhat different way if opposing counsel had objected and said to the judge, look, this case is so far out of what we have done, what other district judges do in this kind of case that it doesn't fit under Caveira, that it is substantively unreasonable, where opposing counsel says that they in effect said that, did they? No, Your Honor. He did not. He did not object either to the procedural or substantive reasonableness of the sentence at the time that Judge Sullivan imposed the sentence. The government's view is that because he failed to object to the procedural unreasonable – alleged procedural unreasonableness, a plain error review does apply. As to substantive reasonableness, it's the government's view that it's an open question whether it's reviewed for plain error when the defendant fails to object at this time of sentencing. But the government's view is that the argument – this argument, whether the sentence – that the sentence here is substantively unreasonable can be rejected on any standard and that certainly Judge Sullivan did not abuse his discretion given the totality of the circumstances to impose that sentence as a substantively reasonable sentence. Unless the Court has further questions, the government rests on its brief. Roberts. Thank you. Thank you both for your arguments. The Court will reserve decision. The final case on the calendar, Valdivizio v. Greer, is on submission. The Clerk will adjourn the Court. The Court is adjourned.